**STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**R. A. ROBERTS, Appellee.**

**No. 6810.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 24, 1958.

Rehearing Denied Dec. 22, 1958.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

Frank P. Dove, Panhandle, for appellee.

PITTS, Chief Justice.

Appellee, R. A. Roberts, sued appellant, Standard Life & Accident Insurance Company, for recovery upon a policy contract issued by appellant to appellee for accident benefits. As a result of a trial on March 18, 1958, in which a jury verdict was rendered, the trial court entered judgment on April 4, 1958, for appellee from which judgment appellant perfected an appeal challenging the same on alleged grounds in effect that appellee had failed to discharge the burden of proof and that there was no evidence to support the material jury findings or that in any event the evidence was insufficient to support such findings and by all means the overwhelming weight and preponderance of the evidence was against such jury findings.

In his second amended original petition upon which he went to trial, appellee pleaded in effect among other things the issuance and terms of the "Insurance Policy Contract No. M84664, being an accident and hospital policy" then in force for the benefit of appellee; that on or about February 10, 1957, while riding in an automobile for business and pleasure appellee received internal injuries, injuries to his legs and feet and "further suffered an acute heart attack," by reason of which bodily injuries caused by the automobile collision he had become totally and continuously disabled and had filed reports of his injuries with appellant claiming benefits under the terms of the policy contract.

Appellant joined issues with appellee and pleaded as a defense in particular that any injuries suffered by appellee were not compensable under the terms of the policy contract because such were not caused solely by reason of an automobile accident as provided for under the terms of the contract.

In support of his claims appellee introduced the said policy contract as his "Exhibit 1," which has shown across the face or first page thereof in large capital letters the following inscription: "This Is A Limited Policy Read Carefully." Also on the first page thereof, Part One of the insuring clause of the policy makes a provision "Against loss from accidental bodily injury sustained while driving or riding within any automobile, truck or bus for business or pleasure during the term of this policy, provided such bodily injuries are caused solely by reason of an automobile, truck or bus accident." Part Two of the insuring clause pertains to the death of an insured as a result of an accident and is not applicable to this case. Part Three of the insuring clause provides for benefits payable to the insured only for such injuries as were caused solely by reason of an automobile, truck or bus accident which resulted in the disability of the insured. The policy further provides for the giving of written notice to the company (appellant) by the insured (appellee) in case of an injury sustained and claims made as provided for under the terms of the policy contract. Such were the pleadings and the material terms of the policy contract relied upon by appellee for recovery.

It was agreed by stipulation of the parties that the premium on the policy involved was $10 payable semi-annually and that such had been paid and that the policy was in force at the time in question.

In support of his claims appellee presented the testimony of his niece, Mrs. Leta Boyd, who testified in effect that on the occasion in question appellee, his wife, the witness and her husband, Joe Boyd, started to drive to Lamesa, Texas; that while on the way they met her husband's brother, Sidney Boyd and his wife, who "flagged" them down and they pulled off of the highway and parked their car on the side of the highway to talk and visit with each other; that while appellee was there seated in their car another car came along and hit the side of their car with such force as to move it over about 18 inches, throwing appellee against the door of their car and injuring his neck and leg and he seemed also to have had a heart attack and was taken to the hospital at Tahoka, Texas, where he received treatment; that prior to his injury he was healthy enough to work and did work; that she did not know about him having any heart attack previously but his heart condition was what was then wrong with him.

Appellee then presented the testimony of his wife, Mrs. R. A. Roberts, whose testimony in the main corroborated that given by Mrs. Boyd about the collision of the car with their car and the injuries of appellee, but she testified that the other car "sideswiped" their car with such force as to shock all of them and cause injuries to her husband, appellee herein; that her husband previously had been ill and in a hospital for several days in Pampa, Texas, in July of 1955 but she did not know if he had a heart attack then or at any time other than on the occasion of the accident in question, although when he left the Pampa hospital in July of 1955 he was told by the doctor to take things easy and not to exert himself and he took medicine for some time but fully recovered and worked again until he received the injuries in the car accident in question, since which time he has been wholly disabled. On cross-examination the witness identified the signatures and the written application for accident insurance containing proof of loss report signed by her husband and the medical report in support thereof signed by Dr. J. L. Prender-

gast who was appellee's attending physician and she testified that such reports were prepared, signed and sent to appellant. Such application and reports were thereafter introduced in evidence by appellant.

Appellee offered the testimony of two other witnesses, R. R. Allison and Loyd Charles Miller, who gave testimony about appellee having worked before the date of his injuries here involved but neither of them attempted to give any testimony about any injuries appellee received by reason of the car collision in question.

In support of his claims for benefits appellee, on May 3, 1957, prepared and signed the proof of loss shown in his written application for accidental benefits previously herein shown to have been identified by his wife as a witness who testified also that such were sent to appellant. Such application, together with proof of loss, was introduced by appellant and is before us. Appellee stated therein that his age was 63; that at the time of the accident he was parked off of the highway in a car owned by Joe Boyd when another car side-swiped the Boyd car, which resulted in appellee's injury, the nature of which as there stated was that he "had a heart attack immediately after the accident" after which he was taken to a hospital. Appellee therein gave no other injuries received by him as a result of the collision and accident. On the reverse side of appellee's said application and bearing the same date was the written and signed report of appellee's attending physician, Dr. J. L. Prendergast, whose statements supported and corroborated the statements made by appellee in his part of the application and particularly did the doctor state that appellee's injury received on the date in question was a "coronary occlusion" and the doctor further therein stated that appellee had a previous "heart attack" on or about July 4, 1955, and was taken to a Pampa hospital. Another physician's report of the said accident identified by appellee's wife as a witness was

made in writing and signed by Dr. J. L. Prendergast of date April 19, 1957, as appellee's attending physician and was sent directly to appellant, which report is likewise in evidence before us, having been introduced by appellant. In that report Dr. Prendergast therein stated that appellee received an injury "on 2–10–57 while parked off of a highway in Mr. Joe Boyd's car, about 9 miles north of Tahoka, Texas, another car side-swiped them. Mr. Roberts (appellee) had a heart attack immediately after accident and was taken to hospital at Tahoka, Texas"; that he thereafter attended appellee for his injuries; that appellee had a previous heart attack on July 4, 1955, and since that date had been able to do only light work, but has been wholly disabled since his last heart attack on February 10, 1957.

Appellant also introduced the testimony by deposition given by Dr. J. L. Prendergast, the attending physician of appellee during his previous illness as well as his illness out of which this suit arose. Dr. Prendergast therein testified in effect that he had known appellee since July 2, 1955, when he was called to his home where he found appellee "had an attack, a pain in his chest," which the doctor diagnosed as "coronary insufficiency"; that appellee became worse on July 4, 1955, and was hospitalized at Pampa, Texas, for some time; that he (the witness) then found nothing wrong with appellee for a man his age other than his heart condition, for which he treated him, but his condition was then such that he would thereafter have to limit the amount of his activity, regulate his living, limit the amount of work and exercise, get sufficient rest, avoid excitement and avoid doing those things that tend to impair his general health or throw a load on his heart; that he had treated appellee on a number of occasions always for the same trouble; that he saw him on March 26, 1956, when he had "coronary insufficiency" and he saw him again with the same trouble on October

30, 1956; that because of appellee's pre-existing heart condition, he could have had a heart attack on the occasion in question regardless of the car accident; that he saw appellee several times after his heart attack on February 10, 1957, the day of the car collision, and treated him. By reason of his experience and knowledge of appellee's previous heart condition, Dr. Prendergast further testified that appellee's previous heart condition was definitely a contributing cause of his heart attack suffered on February 10, 1957, since such a previous condition made him subject to other subsequent heart attacks; that in any event it was his opinion that appellee's previous heart condition was a substantial contributing factor to the heart attack he suffered soon after the car collision on February 10, 1957; that since the car collision he had not treated appellee for any ailment other than his heart condition and that appellee's disability since the car collision of February 10, 1957, was solely the result of his heart condition and not from the condition or infirmity of any other part of his body.

We have herein detailed a report of the material evidence given by all the witnesses. After the evidence closed, appellant presented its motion for an instructed verdict upon the grounds in part that appellee had failed to discharge the burden of proof in establishing his claims; that appellee had offered no evidence tending to show that his injury was caused solely by reason of an automobile accident and certainly no evidence of probative value was offered to show such a material fact. Appellant's motion was overruled by the trial court after which the case was submitted to the jury upon special issues. In submitting the case to the jury the trial court defined the word "solely" in the following language:

"The word 'solely' as used in the phrase 'caused solely' means alone, that is, the only cause of the injuries complained of, and if there be more than one cause of the injuries com-

plained of, then such injuries cannot be caused solely by an event."

In answer to the issues submitted, the jury found that appellee did not suffer from coronary insufficiency prior to February 10, 1957; that he was not suffering from coronary insufficiency on February 10, 1957, which resulted in his heart attack; that the bodily injury suffered by appellee on February 10, 1957, was caused solely by the automobile accident in question; that appellee has been wholly and continuously disabled since February 10, 1957, and that such disability suffered by him was not partly a result of a coronary insufficiency. After the verdict and prior to judgment, appellant filed its motion for judgment non obstante veredicto upon similar grounds set forth in its motion for peremptory instruction, which motion was overruled. Thereafter appellee filed his motion for judgment upon the jury verdict, which was granted and judgment was accordingly rendered for appellee for the accident benefits set forth in the policy contract, together with an attorney fee in the sum of $500 and a 12% penalty in the sum of $252, from which judgment appellant appealed and has presented numerous points complaining that the jury disregarded the evidence and complaining further about the actions of the trial court in permitting appellee to recover without meeting the requirements of the terms of the contract he relied upon and about other matters it had previously set out in its motions for peremptory instruction and for judgment non obstante veredicto, which grounds were likewise set out at length in its motion for new trial, which motion was overruled.

Appellee pleaded the terms of the policy contract and particularly the insuring clause thereof upon which he relies for his recovery. He introduced the entire policy contract in evidence, which shows in big letters on its face that it is a "Limited Policy." He pleaded and claims accidental benefits under the terms of the insuring clause of the policy, which grants

him such benefits for bodily injury "caused solely by reason of an automobile, truck or bus accident." In support of his claims for recovery, appellee pleaded and proved the terms of the contract, including the limitation phrase just previously quoted. Such phrase is a material element of the contract, since both parties agreed under the terms thereof that appellee's rights to receive benefits would be limited to any injuries caused solely by reason of an automobile, truck or bus accident. Under the terms of the contract appellee therein agreed that unless his injury sustained was caused solely by reason of an automobile, truck or bus accident, appellant would not be liable. It is elementary that appellee had the burden of proof to establish his alleged claims and benefits and it was as much his burden to prove by competent evidence that his injury in question was "caused solely by reason of an automobile accident" as it was to prove his injury by competent evidence. He had the burden of bringing his claims within the contractual limitations expressed in the contract. This appellee failed to do. Under the record presented it is our opinion that appellee failed to even attempt to prove that his injury was "caused solely by reason of an automobile accident." On the contrary, appellant proved by an overwhelming weight and preponderance of the evidence given by appellee's family physician that appellee's injury sustained was not "caused solely by reason of an automobile accident" since there were definitely other contributing causes of his heart attack suffered on February 10, 1957, by reason of several previous attacks suffered by appellee due to coronary insufficiency. The testimony given by Dr. Prendergast, appellee's family physician who attended him and who filled out and sent in medical reports for him, was positive, firm and not controverted by any other testimony. The testimony offered by appellee in support of his claims given by his niece and his wife did not attempt to controvert the doctor's testimony. They were the only other witnesses who attempted to testify about appellee's injuries and they testified that they did not know about any heart attacks appellee suffered prior to February 10, 1957. There is nothing in their testimony that would even indicate that appellee's heart attack on the occasion in question was caused solely by reason of the car accident and the heart attack was the only injury for which appellee sought accident benefits in his application made to appellant. Appellee's wife, Mrs. Roberts, testified she knew he was sick and in the hospital in Pampa in July of 1955 but nobody told her he had a heart attack. She further testified however that she did not know whether or not she was told what he was in the hospital for on that occasion. Appellee's written application for accident benefits signed by him of date May 3, 1957, and sent by him to appellant recites no injury received by him on February 10, 1957, other than he "had a heart attack immediately after the accident" and his physician, Dr. Prendergast, reported on the reverse side of his said application and in his response to a question propounded therein inquiring if appellee had "suffered any disease, infirmity, physical or mental impairment, which contributed to cause this injury or to prolong disability," the doctor answered appellee "had a heart attack on July 4, 1955" and was sent to a Pampa hospital where Dr. Donaldson attended him. Appellee sent the said written application to appellant containing the foregoing information. No reason is reflected by the record for discrediting Dr. Prendergast's testimony or his diagnosis of appellee's physical ailments and we find nothing in the record to indicate that appellee was displeased with the doctor personally or with his professional services.

It has been held that lay witnesses usually may give opinions concerning many matters pertaining to sickness or health but we believe only the opinions of a doctor or such other expert witness can have any value in forming conclusions about the effect and result of a heart at-

tack or coronary insufficiency. Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S. W.2d 217 and other authorities there cited. The case cited also holds in effect that a court or jury has no right to substitute an adverse opinion for that given by a doctor in sworn testimony when there is no evidence to support such an adverse opinion. In the case at bar there is no evidence in the record to support an adverse opinion to that given in his testimony by Dr. Prendergast, particularly on the question of appellee's heart attacks or his coronary insufficiency troubles or the effects and result of such.

Appellee alleged injuries other than a heart attack as a result of the automobile accident on the occasion in question and there was some proof to the effect that his neck and leg were injured as a result of the accident but no proof was offered to show the nature of any injuries to his neck or leg and no claim was made for injuries received in appellee's application made to appellant for accidental benefits other than he had a heart attack.

For the reasons stated it is our opinion that appellant's motion for an instructed verdict should have been sustained. Since that was overruled its motion for judgment non obstante veredicto was good. But in any event there was not sufficient evidence of probative value to support the jury findings to the effect that appellee's bodily injury suffered on February 10, 1957, was caused solely by the automobile accident in question; that the disability suffered by appellee was not partly the result of coronary insufficiency; that appellee did not suffer from coronary insufficiency prior to February 10, 1957, and that he was not suffering from coronary insufficiency on February 10, 1957, which resulted in his heart attack. Certainly a reasonable consideration of all the evidence reveals that the overwhelming weight and preponderance of the evidence heard is contrary to such jury findings. In fact, a fair examination of all of the evidence of probative value found in the record would support a direct opposite answer to each of those given by the jury in making the said findings referred to.

For the reasons stated the judgment of the trial court is reversed and a take nothing judgment is here rendered denying appellee any recovery, with all costs adjudged against him. Reversed and rendered.